FILED

2023 Aug-21  AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FELICIA FORTUNE, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:23-cv-00318-ACA** |
| | } | |
| **MICHAEL CIBRAN, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

Plaintiffs Felicia Fortune and Fortune Global Enterprise, LLC and Defendants Michael Cibran and Your Kids Urgent Care Alabama, LLC entered an independent contractor agreement pursuant to which Plaintiffs would provide certain franchise and marketing services to Defendants' urgent care clinics. The relationship between the parties soured, and Defendants terminated Plaintiffs' contract and have refused to pay them funds the Plaintiffs claim they are owed under the agreement.

Plaintiffs filed suit against Defendants, asserting claims for breach of contract (Counts One, Two, Three, and Four); unjust enrichment (Count Five); conversion (Counts Six and Seven); and deceit (Counts Eight and Nine). (Doc. 16

at 6–12). They seek damages for "mental anguish and financial harm" in the breach of contract claims. (*Id.* at 7–8 ¶¶ 51, 55, 59).

Before the court is Defendants' motion to partially dismiss Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 22). Defendants seek dismissal of Plaintiffs' contract-based claims for lost profits and consequential or incidental damages and Counts Five through Nine. (*Id.*).

The court **WILL GRANT IN PART** and **DENY IN PART** the motion. The court **WILL GRANT** the motion to dismiss Plaintiffs' contract-based claims for lost profits and consequential or incidental damages. The court also **WILL GRANT** the motion to dismiss Counts Six, Seven, Eight, and Nine. The court **WILL DENY** the motion to dismiss Count Five.

## I.     BACKGROUND

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider documents a plaintiff attaches to a complaint. *See Hoefling v. City of Miami.*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."). Here, Plaintiffs attached to their amended complaint a copy of the contract at issue in this case.

(Doc. 16-1). Therefore, the court's description of the facts incorporates not only the allegations in the amended complaint but also the contents of the contract attached to the amended complaint.

Plaintiff Felicia Fortune is the founder, sole member, and chief executive officer of Plaintiff Fortune Global Enterprise, LLC, which provides consulting services to companies to help them with branding strategies. (Doc. 16 at 1 ¶ 2, 2 ¶ 8; doc. 16-1 at 1, 4). Defendant Your Kids Urgent Care of Alabama, LLC operates as a franchisor of urgent care clinics marketed to children. (Doc. 16 at 2 ¶ 10). Defendant Michael Cibran is the sole member and chief executive officer of Your Kids Urgent Care. (*Id.* at 2 ¶ 4; doc. 16-1 at 1).

In May 2018, Ms. Fortune, on behalf of herself and Fortune Global Enterprise, entered an independent contractor agreement with Mr. Cibran on behalf of himself and Your Kids Urgent Care. (Doc. 16 at 3 ¶ 15; doc. 16-1). Pursuant to the contract, Plaintiffs agreed to perform a variety of franchising, branding, and marketing services for Defendants. (Doc. 16 at 3 ¶ 16; doc. 16-1 at 1, 5). In exchange for these services, Defendants were to pay Plaintiffs a monthly retainer fee; royalties of 2% on franchise and corporate stores that Plaintiffs helped open and run; and a 20% commission on each franchise fee sold. (Doc. 16 at 3 ¶ 16; doc. 16-1 at 1). The parties agreed that if Defendants were late paying Plaintiffs,

3

Defendants would pay "an additional 5% per month on the amount owed, or the legally allowable maximum, whichever is less." (Doc. 16-1 at 1).

Either party could terminate the agreement without cause, but if Defendants decided to cancel the agreement, Plaintiffs' royalties and retainers would continue for six months, paid on the 15th and 30th of each month, and Defendants were required to "promptly" pay Plaintiffs for services performed before the effective date of the termination. (*Id.* at 2).

By 2019, Ms. Fortune's "independent contractor" role morphed into something more; the work she performed for Your Kids Urgent Care, and at the direction of Mr. Cibran and Your Kids Urgent Care, left her unable to direct attention to work other work. (Doc. 16 at 4 ¶ 22). In October 2019, Ms. Fortune helped open a Your Kids Urgent Care location in Vestavia Hills. (*Id.* at 4 ¶ 24). Mr. Cibran asked Ms. Fortune to assume full-time operation over the clinic, which was not part of her independent contractor agreement and considerably increased her responsibilities. (*Id.* at 4 ¶¶ 25, 29).

By 2021, Your Kids Urgent Care identified Ms. Fortune as its President in the company's franchise disclosure document. (Doc. 16 at 5 ¶ 30). In 2022, Ms. Fortune discussed the possibility of purchasing and franchising the Vestavia Hills clinic with Mr. Cibran, but he decided not to sell the clinic. (*Id.* at 5 ¶ 32). Around the same time, Ms. Fortune experienced difficulty working with Your Kids

Urgent Care's central management which was located in Florida. (*Id.* at 5 ¶ 33). One specific point of contention was how Your Kids Urgent Care, at Mr. Cibran's direction, was redirecting payments intended for Alabama operations to the company in charge of Florida and general franchise operations. (*Id.* at 5 ¶ 35). Ms. Fortune told Mr. Cibran she was concerned these payments could expose Your Kids Urgent Care to criminal and other legal liabilities. (Doc. 16 at 5 ¶ 36). Mr. Cibran and Your Kids Urgent Care then stopped paying Ms. Fortune and Fortune Global Enterprise for their work pursuant to the independent contractor agreement. (*Id.* at 6 ¶ 38).

In early October 2022, Mr. Cibran notified Ms. Fortune that he was terminating her association with Your Kids Urgent Care, effective immediately. (*Id.* at 5 ¶ 39). Ms. Fortune told Mr. Cibran that she was entitled to back pay and front pay for the next three months pursuant to the parties' agreement, and Mr. Cibran replied, "I'm not trying to stop you from getting your money." (Doc. 16 at 6 ¶ 40). Ms. Fortune interpreted Mr. Cibran's comment to mean that she could withdraw the funds she was owed directly from Your Kids Urgent Care's account, so she wrote herself a check for $166,368.69. (*Id.* at 6 ¶ 41). The following week, Mr. Cibran contacted Ms. Fortune and threatened her if she did not return the funds. (*Id.* at 6 ¶ 42). Ms. Fortune returned the money and in early November 2022, she sent Mr. Cibran a formal demand for payment. (*Id.* at 6 ¶¶

43–44). Several weeks later, Mr. Cibran's attorney responded, refusing to pay Ms. Fortune or Fortune Global Enterprise. (Doc. 16 at 6 ¶ 45).

## II.     DISCUSSION

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants move to dismiss all contract-based claims for special damages, mental anguish, lost profits, consequential damages, or incidental damages, based on a contractual limitation on damages. (Doc. 22 at 3–4). Defendants also move to dismiss Plaintiffs' unjust enrichment, conversion, and deceit claims for failure to state a claim. (*Id.* at 4–13).

> ### 1.     Contract-Based Claims for Special Damages, Mental Anguish, Lost Profits, Consequential Damages, or Incidental Damages

In Counts One through Four, Plaintiffs assert breach of contract claims. (Doc. 16 at 6–8). For three of those four counts, Plaintiffs seek damages for "mental anguish and financial harm." (*Id.* at 7 ¶ 51, 8 ¶ 55, 8 ¶ 59). Defendants seek dismissal of any contract-based requests "for special damages, mental anguish, lost profits, consequential damages, or incidental damages" based on a

limitation of liability clause contained in the parties' contract. (Doc. 22 at 4). The clause states that "neither party to this agreement will be liable for the other's lost profits or special, incidental, or consequential damages, whether in an action in contract or tort." (Doc. 16-1 at 2).

Alabama courts enforce contractual provisions that restrict recovery of certain types of damages, as long as the provisions are not unconscionable and do not violate public policy. *Sears Termite & Pest Control, Inc. v. Robinson*, 883 So. 2d 153, 156–58 (Ala. 2003). Plaintiffs have not argued that the contractual limitation on damages is unconscionable or that it violates public policy. (Doc. 24 at 1–2). Instead, they argue that parties cannot contract away liability for intentional torts, including deceit. (*Id.*). But the defendants have not moved to dismiss any tort-based claims for damages based on the limitation of liability clause contained in the contract; they move to dismiss only contract-based claims for damages that exceed that limitation. (*See* doc. 22 at 3–4). Accordingly, the court **WILL GRANT** Defendants' motion to dismiss Plaintiffs' demands in Counts One, Two, and Three for any damages in excess of the limitation of liability clause in the parties' contract.

    <u>2.</u>    <u>Unjust Enrichment (Count Five)</u>

In Count Five, Plaintiffs assert a claim for unjust enrichment. (Doc. 16 at 9). Under Alabama law, to state a claim for unjust enrichment, a plaintiff must allege

that "the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (cleaned up). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Id.* (cleaned up).

Defendants do not argue that Plaintiffs' factual allegations are insufficient to support an unjust enrichment claim. Rather, Defendants contend that because Plaintiffs have alleged the existence of an express contract, the unjust enrichment claim necessarily fails as a matter of law. (Doc. 22 at 4–5). The Alabama Supreme Court "has recognized where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter." *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996). Although a party may not recover for both breach of contract and unjust enrichment, at the pleading stage, "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Defendants argue that because the amended complaint does not "expressly allege[] unjust enrichment in the alternative" to the breach of contract claims, the unjust enrichment claim cannot survive. (Doc. 22 at 5). But the court has located no such requirement in Federal Rule of Civil Procedure 8(d)(3). Therefore, the court finds

that dismissal of the unjust enrichment claim is not appropriate merely because Plaintiffs also assert a breach of contract claim.  Accordingly, the court **WILL DENY** Defendants' motion to dismiss Count Five.

      3.     <u>Conversion (Counts Six and Seven)</u>

In Counts Six and Seven, Plaintiffs assert claims for conversion. (Doc. 16 at 10–11). Defendants argue that Plaintiffs' conversion claims fail to state a claim because they allege conversion of non-identifiable money. (Doc. 22 at 5–6).

"Alabama law defines conversion as the exercise of dominion of another over personal property to the exclusion of or in defiance of the owner's right." *Pantry, Inc. v. Mosley*, 126 So. 3d 152, 162 (Ala. 2013) (quotation marks and emphasis omitted). To state a claim for conversion under Alabama law, a plaintiff must allege facts showing that the defendant: (1) "converted specific personal property to his own use and beneficial enjoyment" or (2) "exercised dominion over property to which, at the time of the conversion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which he was entitled to immediate possession." *Schaeffer v. Poellnitz*, 154 So. 3d 979, 988 (Ala. 2014).

"Generally, an action will not lie for the conversion of money," but "if the money at issue is capable of identification, then a claim of conversion may be appropriate." *Greene Cnty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala.

1991). Money capable of identification includes "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993); *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1304–05 (11th Cir. 2010).

Citing *Bailey*, Plaintiffs argue that their conversion claims state a claim because Ms. Fortune withdrew the $166,363.69 Plaintiffs claim they were due under the parties' contract from Your Kids Urgent Care's account, and once she returned the funds, Mr. Cibran transferred money out of the account. (Doc. 24 at 2). But the allegations in *Bailey* are distinguishable from this case. In *Bailey*, the Alabama Supreme Court found that a conversion claim survived a motion to dismiss where the allegations, if proven, could show the defendants "converted to their own use funds that had been specifically deposited in" a particular high school lunchroom account to pay for school lunch programs. *Bailey*, 586 So. 2d at 899. The Court noted that the allegations "involve[d] funds that were directly traceable to a special account." *Id.*

Here, Plaintiffs allege that Defendants continue to retain ownership and control over the monthly retainers, undetermined royalties, and unearned fees that belong to Plaintiffs. (Doc. 16 at 10 ¶¶ 74–76, 11 ¶ 79; *see also id.* at 8 ¶ 57–58).

10

Although Plaintiffs allege Defendants withheld payment, the amended complaint does not identify any account or source of funds from which Defendants were obligated to pay Plaintiffs. (*See id.* at 10 ¶¶ 74–74; *id.* at 11 ¶ 79). Thus, Plaintiffs have not plausibly alleged that the money at issue "was held in any sort of special account," sufficient to state a claim for conversion. *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 660 (Ala. 2002); *Bailey*, 586 So. 2d at 899.

Accordingly, the court **WILL GRANT** Defendants' motion to dismiss Counts Six and Seven.

### 4.    Deceit (Counts Eight and Nine)

In Count Eight, Plaintiffs allege that Defendants fraudulently misrepresented their intention to pay Plaintiffs in October 2022. (Doc. 16 at 11 ¶ 83). In Count Nine, Plaintiffs allege that Defendants fraudulently misrepresented the profitability and gross receipts of Your Kids Urgent Care by redirecting payments intended for Your Kids Urgent Care to other companies controlled by Mr. Cibran. (*Id.* at 12 ¶ 88). Plaintiffs also allege that Defendants fraudulently suppressed accurate financial reports from Plaintiffs which they had a duty to divulge. (*Id.* at 12 ¶ 89).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). This requires a plaintiff to identify "the who, what, when, where, and how of the fraud alleged."

*Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022).

Defendants argue that the misrepresentation claims in Counts Eight and Nine are not pleaded with particularity. (Doc. 22 at 9–11). They also argue that the Plaintiffs fail to allege essential elements of their claims in Counts Eight and Nine. (*Id.* at 6–9, 11–13).

> a.     *Misrepresentation Claim (Count Eight)*

In Count Eight, Plaintiffs allege that Defendants "misrepresented [their] intentions to pay the Plaintiff on multiple occasions in approximately October of 2022." (Doc. 16 at 11 ¶ 83). Defendants argue this allegation fails to plead the identity of the person responsible for making the statement or the content of such statements. (Doc. 22 at 9–10). Plaintiffs respond that Count Eight is based on Mr. Cibran's October 2022 statement to Ms. Fortune that he was "not trying to stop [Ms. Fortune] from getting [her] money." (Doc. 24 at 6; *see* doc. 16 at 6 ¶ 40). This allegation sufficiently alleges who made the statement, when it was made, and the substance of the statement. Therefore, the court will not dismiss Count Eight for failure to comply with Rule 9(b).

Defendants also argue that Plaintiffs have not pleaded required elements of the misrepresentation claim in Count Eight. (Doc. 22 at 6–9). Under Alabama law, to state a claim for fraudulent misrepresentation, a plaintiff must allege facts

showing "(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *Billy Barnes Enterprises, Inc. v. Williams*, 982 So. 2d 494, 499 (Ala. 2007) (quotation marks omitted). "If fraud is based upon a promise to perform or abstain from performing in the future," a plaintiff also must allege facts plausibly showing "(1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive." *Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987).

Plaintiffs' misrepresentation claim in Count Eight is based on Mr. Cibran's promise to pay Ms. Fortune in the future. (Doc. 16 at 6 ¶ 40, 11 ¶ 83). Among other reasons, Defendants argue that the misrepresentation claim in Count Eight fails to state a claim because the amended complaint contains no allegation that at the time of Mr. Cibran's statement, he intended not to act on his promise or that he acted with an intent to deceive. (Doc. 22 at 8–9). Plaintiffs respond that they have pleaded facts showing Mr. Cibran's intent not to pay with an intent to deceive in paragraph 84 of the amended complaint. (Doc. 24 at 5). That paragraph alleges that Defendants made "representations with the intent to prevent Plaintiffs from filing a complaint with appropriate governmental entities and/or pursuing legal action against Defendants" and that "Defendants were aware of [their] inability and/or

13

refusal to tender payments to Plaintiffs on the dates promised." (Doc. 16 at 11 ¶ 84). But these are wholly conclusory statements unsupported by any factual allegations. *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Because the amended complaint is devoid of any facts plausibly alleging that Mr. Cibran intended not to pay Ms. Fortune or that he acted with an intent to deceive, the court **WILL GRANT** Defendants' motion to dismiss Count Eight.

### b.     *Misrepresentation Claim (Count Nine)*

In Count Nine, Plaintiffs allege that Defendants "misrepresented the profitability and gross receipts of [Your Kids Urgent Care], fraudulently redirecting payments intended for [Your Kids Urgent Care] away from that company to other companies controlled by and for the benefit of [Mr.] Cibran." (Doc. 16 at 12 ¶ 88). But the amended complaint contains no factual allegations about what statements were made, who made the statements, or when they were made. Indeed, Plaintiffs concede that they "are not currently aware of what, specifically, was misrepresented" with respect to Your Kids Urgent Care's revenues. (Doc. 24 at 7). Accordingly, Plaintiffs have not pleaded the misrepresentation claim in Count Nine with particularity, and the court **GRANTS** Defendants' motion to dismiss the claim.

### c.     Suppression Claim (Count Nine)

In Count Nine, Plaintiffs allege that Defendants "withheld the accurate financial reports from Plaintiffs, which they had a duty to divulge." (Doc. 16 at 12 ¶ 89).

To state a claim for fraudulent suppression, a plaintiff must allege facts showing: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010). Defendants argue that the court should dismiss Plaintiffs' suppression claim because the amended complaint does not allege a basis for their duty to disclose any unidentified financial reports. (Doc. 22 at 11–12). The court agrees.

"A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995). In response to Defendants' motion to dismiss, Plaintiffs contend that "Defendants had a contractual obligation to provide accurate financial information." (Doc. 24 at 8). But "[a] mere breach of . . . contract is not sufficient to support a charge of fraud." *McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954); *see also C & C Prods., Inc. v. Premier Indus. Corp.*, 275 So. 2d 124, 130 (Ala.

1972) ("[F]ailure to perform a contract obligation is not a tort."). Plaintiffs argue that Defendants' failure to provide the financial reports necessary to make a commission calculation would be a breach of contract but posit "[t]hat is not what happened here." (Doc. 24 at 8). The court disagrees.

Plaintiffs' suppression claim is based on allegations that Defendants' failure to provide accurate financial reports prevented Plaintiffs from being able to accurately determine and calculate the royalties to which they claim they are entitled. (Doc. 16 at 12 ¶¶ 89–90). Because Plaintiffs' allegations in support of their fraudulent suppression claim amount to nothing more than breach of contract, the claim fails to state a claim.

Accordingly, the court **WILL GRANT** Defendants' motion to dismiss the suppression claim in Count Nine.

## III.  CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** Defendants' partial motion to dismiss.

The court **WILL GRANT** the motion to dismiss Plaintiffs' contract-based claims for lost profits and consequential or incidental damages. The court also **WILL GRANT** the motion to dismiss Counts Six, Seven, Eight, and Nine. The court **WILL DENY** the motion to dismiss Count Five.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 21, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE